**KINGSROW ENTERPRISES, INC.,**
**Plaintiff,**

v.

**METROMEDIA, INC., Defendant.**
**No. 74 Civ. 2856.**

United States District Court,
S. D. New York.
July 8, 1975.

[1]. By way of footnote significance, this departure from *Homer v. Lorillard* comports with the current efforts of bench, bar and legislature to expand, not to contract, the jurisdictional limits of the Municipal Court.

Lester, Schwab, Katz & Dwyer, New York City, for plaintiff; James J. Harrington, New York City, of counsel.

Coudert Brothers, New York City, for defendants; Gordon T. King, Michael J. Calvey, New York City, of counsel.

## MEMORANDUM

FRANKEL, District Judge.

Defendant Metromedia, Inc. has moved for summary judgment. Plaintiff Kingsrow has cross-moved for partial summary judgment. Both motions will be denied.

For purposes of this decision it is sufficient to recount that plaintiff claims that its copyrights to 26 one-hour episodes of "The Judy Garland Show" have been infringed by defendant. Defendant asserts (and predicates its motion for summary judgment upon the assertion) that it has a valid license to broadcast the Show from the copyright owner, Trophy Productions, Ltd. Trophy, defendant contends, acquired the copyrights at a sheriff's sale held in Westchester County on September 18, 1969. The sale was in execution of a judgment entered against Kingsrow and others in New York State Supreme Court on March 11, 1969.[1]

---

1. The circumstances of the sheriff's sale, according to defendant, were as follows: The president of Pathe Pictures, Inc., one of the judgment creditors, had in his possession most of the physical properties related to the the Judy Garland Show, including the production and copyright records. (Who had title to these objects is disputed, but it does not matter at this time.) He arranged to have all these properties consolidated in the

The decisive flaw in defendant's theory is that the sheriff never acquired the copyrights or the power to sell them.

For its contrary view, defendant relies upon the seemingly undisputed (but, at any rate, immaterial in the court's view) fact that the copyright *certificates* were physically present in the warehouse where the sale took place and were listed in the inventory signed by the sheriff showing the things "sold." Building upon the broadly undisputed proposition that the validity of a transfer of a copyright is to be determined by state law, *Bartsch v. Metro-Goldwyn-Mayer, Inc.*, 391 F.2d 150, 153–4 (2d Cir.), cert. denied, 393 U.S. 826, 89 S.Ct. 86, 21 L.Ed.2d 96 (1968),[2] defendant says that these physical facts establish an effective assignment of the copyrights under N.Y. CPLR § 5232. The trouble is that, whoever may have been "in the possession or custody of" the certificates within the meaning of § 5232(a), defendant itself acknowledges, indeed insists for purposes of this motion, that plaintiff was owner of the *copyrights* at the time of the sale. The certificate is not the copyright; it is at its insufficient best in this setting "prima facie evidence of the facts stated therein." 17 U.S.C. § 209. Even the owner may controvert such statements. *Baron v. Leo Feist, Inc.*, 78 F.Supp. 686, 692 (S.D.N.Y.1948), aff'd, 173 F.2d 288 (2d Cir. 1949).

The dispositive point is that the possessor of a copyright certificate is not *ipso facto* the copyright owner. The valuable federal right is not transferred by mere physical delivery, or other acquisition, of the certificate. The owner may, of course, assign the copyright. But this is to be done "by an instrument in writing signed by the proprietor of the copyright * * *." 17 U.S.C. § 28.

This does not mean, obviously, that Kingsrow's judgment creditors were powerless to reach the copyright in satisfaction of their claims. The law of New York, like that of other states, is adequate to accomplish forced assignments of such incorporeal rights. See N.Y. CPLR § 5225(a) and (c). It is clear, however, at least upon the materials now before the court, that defendant's putative assignor never became an assignee in that fashion. There was never the requisite notice to the copyright owner (Kingsrow) and no court order for the kind of assignment that might have been compellable. There was only the futile business with the certificate, a ritual patently inadequate to the end now claimed for it.

Plaintiff has moved to strike certain defenses. It seems overwhelmingly probable these defenses will indeed fail. However, defendant puts objections not totally dispelled by the papers. The questioned defenses may stand for the time being.

Both motions for summary judgment are denied. So ordered.

---

Westchester warehouse. His attorney, in the attorney's words, "took the appropriate steps to bring about a levy and subsequent sheriff's sale of these properties." The attorney states, and it is not disputed, that at the time of the levy the sheriff "specifically referred to the copyrights in and to the programs, and while doing so, he picked up in his hand the actual copyright certificates * * *." While the judgment creditors did not believe that levying on the copyright certificates in this manner required notice to the judgment debtor, see N.Y. CPLR § 5232, McKinney's Consol.Laws, c. 8, mail notice was given by the sheriff, but it was returned unopened and undelivered.

2. Always assuming, of course, that valid federal restrictions are met. See, e. g., the requirement that an assignment of a copyright be in writing. 17 U.S.C. § 28.